**IN THE WESTERN DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **STEPHEN GRAY,** | § | **CIVIL ACTION** |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **NO. 5:24-cv-133** |
| | § | |
| **ZACHRY INDUSTRIAL, INC.,** | § | |
| **ZACHRY GROUP LLC,** | § | |
| **ZACHRY HOLDINGS INC., and** | § | |
| **ZACHRY ENTERPRISE SOLUTIONS, LLC** | § | |
| **Defendants** | § | **JURY REQUESTED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

Stephen Gray, ("Mr. Gray" or "Plaintiff") files this Original Complaint against Zachry Industrial, Inc., Zachry Group LLC (and/or Zachry LLC), Zachry Holdings Inc., and Zachry Enterprise Solutions, LLC  (collectively "Zachry" or "Defendants") and shows the Court and Jury as follows:

### INTRODUCTION

1.      This is an employment age discrimination and retaliation case.  Defendants Zachry employed Mr. Gray as an attorney and business manager for approximately 15 years. During his employment, Zachry regularly recognized Mr. Gray as an excellent employee. In 2020, Zachry laid off numerous employees after the onset of the Covid 19 pandemic. In discussing employment decisions relating to the layoff, Zachry's Senior Vice President of People and Culture (Human Resources) directed management employees to consider whether employees had a long enough "runway" to benefit the company, which was a direct reference to an employee's age. Mr. Gray, who was 60 years old at the time, opposed the "runway" directive and Zachry's age discrimination. Shortly thereafter, Zachry terminated Mr. Gray's employment for pretextual reasons.  Zachry

1

terminated Mr. Gray because of his age and in retaliation for opposing Zachry's illegal age discrimination. Mr. Gray brings this suit to help end Zachry's discriminatory practices and because of the serious damage to his career and life caused by Zachry's illegal actions.

## JURISDICTION AND VENUE

2.      This action involves a federal question under the Age Discrimination in Employment Act, as amended, ("ADEA"), 29 U.S.C. §§ 621 *et seq.*  As such, jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3).

3.      Venue is proper within the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. § 1391 because the events establishing the basis for Plaintiff's cause of action occurred within Bexar County, Texas in the Western District of Texas, San Antonio Division.

## JURY DEMAND

4.      Plaintiff requests a jury trial.

## PARTIES

5.      Plaintiff Stephen Gray is an individual who at all relevant times was employed by Defendant Zachry Industrial, Inc.

6.      Defendant Zachry Industrial, Inc. is a corporation established under the laws of the state of Texas and who's headquarters are located in San Antonio, Texas.  Defendant may be served process via its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900 Dallas, TX 75201.

7.      Defendant Zachry Group, LLC. (and or Zachry LLC) is a business entity established under the laws of the state of Texas and who's headquarters are located in San Antonio, Texas.  Defendant may be served process via its registered agent, CT Corporation System, 1999

Bryan St., Ste. 900 Dallas, TX 75201.

8.      Defendant Zachry Holdings, Inc. is a business entity established under the laws of the state of Delaware and who's headquarters are located in San Antonio, Texas. Defendant may be served process via its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900 Dallas, TX 75201.

9.      Zachry Enterprise Solutions, LLC is a business entity established under the laws of the state of Texas and who's headquarters are located in San Antonio, Texas.  Defendant may be served process via its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900 Dallas, TX 75201.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TIMELINESS OF SUIT

10.     Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on February 19, 2021, within 300 days of Defendants' illegal decision to terminate his employment on or about September 30, 2020. On November 14, 2023, the EEOC issued a "Determination and Notice of Rights" letter.  This suit is filed within 90 days of Plaintiff's receipt of that notice.

## FACTS

11.     The "Zachry Group," including the Zachry Defendants, is a business organization of approximately 50 or more companies or other legal entities engaged primarily in the construction, engineering and maintenance industries. The Zachry Group has locations across the country as well as internationally. The Zachry Group employed approximately 20,000 employees before the Covid-19 pandemic began in or about March 2020.

12.     The Zachry Group is privately owned, directly or indirectly, by John B. Zachry and the Zachry family.

3

13. At all relevant times, John B. Zachry was the Chairman and Chief Executive Officer of the Zachry Group.

14. The Zachry Group and the Zachry Defendants operate as an integrated-enterprise and/or joint employer, sharing human resources functions and personnel including in relation to the employment actions against Mr. Gray, as well as IT services, Legal services, and numerous other integrated and joint business activities.

15. Zachry hired Mr. Gray to work as an attorney in its legal department in 2005.

16. Throughout Mr. Gray's employment, Zachry recognized him as an outstanding employee and attorney. Zachry routinely gave Mr. Gray excellent feedback about his performance including annual raises and bonuses, positive performance evaluations, and inclusion in greater bonus pools.

17. In approximately 2010 or 2011, Zachry promoted Mr. Gray to the position of Assistant General Counsel.

18. CEO John Zachry had a pattern of age discrimination in the company's employment decisions.

19. In approximately 2014, CEO John Zachry forced General Counsel Goff (then approximately 67 years of age) to retire effective in 2015, years before she had planned.

20. CEO John Zachry informed Mr. Gray afterwards that he would not be promoted to the General Counsel position. This was in spite of the fact that General Counsel Goff had previously told Mr. Gray that he was "in the best position a person could be in to become the next General Counsel" and that he was on CEO John Zachry's list to be promoted to a Vice President.

21. When Mr. Gray asked CEO John Zachry why he would not be promoted to General Counsel, CEO John Zachry assured Mr. Gray that he had done a good job but that he wanted skill

sets in the position that did not currently exist in the Legal Department.

22.     In 2015, CEO John Zachry hired David Schwab for the General Counsel position. Mr. Schwab was approximately 45 years old at the time and less experienced than Mr. Gray, who was approximately 55 years old.

23.     CEO John Zachry highlighted Mr. Schwab's litigation experience as a primary reason for hiring him for the General Counsel position.  However, this contradicted John Zachry's previous explanation regarding why he did not promote Mr. Gray to the position given the fact that Mr. Gray had worked extensively over his career in litigation, including during his employment at Zachry where Mr. Gray's primary responsibility had been managing Zachry's litigation.

24.     In approximately July 2018, General Counsel Schwab informed Mr. Gray that CEO John Zachry wanted to move him from the Associate General Counsel's position in the Legal Department to the Asset Management Department.  General Counsel Schwab told Mr. Gray that CEO John Zachry wanted Mr. Gray to learn the Asset Management Department and then replace the current head of that department, Vice President Billy Knox, who wanted to move to a different position.  General Counsel Schwab told Mr. Gray the transfer was an opportunity for advancement to a Vice President position, which was not available in the Legal Department.

25.     General Counsel Schwab had several conversations with Mr. Gray about the transfer. Mr. Schwab assured Mr. Gray that the transfer was a valid chance to advance, despite Mr. Gray's concerns that the transfer appeared more like CEO John Zachry's method of "easing people out" by moving him into a position that was not needed and that could be eliminated during the next economic downturn. Mr. Schwab assured Mr. Gray that CEO John Zachry had listened to his advice to advance Mr. Gray because he deserved to be promoted. General Counsel Schwab further

5

said that CEO John Zachry had singled Mr. Gray out for the role, rejecting another employee who had been suggested for the position.

26.    General Counsel Schwab told Mr. Gray that CEO John Zachry "strongly encouraged" him to accept the transfer.  Mr. Gray did as CEO John Zachry strongly encouraged and Zachry moved Mr. Gray into the position of General Manager of the Asset Management Department.

27.    Mr. Gray was 58 years old at the time Zachry transferred him to the Asset Management Department. Zachry assigned a much younger attorney who was approximately 37 years of age to replace Mr. Gray in his role in the Legal Department.

28.    In or about Spring 2020 in response to the Covid 19 pandemic, Zachry and the Zachry Group laid off a significant number of employees.

29.    As Zachry made employment decisions relating to the layoffs, Zachry's Senior Vice President of People and Culture (Human Resources), Tammy Mallaisé blatantly spoke with management employees about using age as a factor in the decisions.

30.    For example, during a conference call/meeting on or about May 7 or 8, 2020, with VP Knox and other management employees, HR SVP Mallaisé rejected a proposal to move a Zachry employee who was approximately 50 to 60 years old, T.H. Wheat, into an Equipment Superintendent position at the GCGV site near Corpus Christi, Texas. Although the transfer of Mr. Wheat to the superintendent position had been approved by Mr. Gray, VP Knox, and another Zachry Vice President, Buddy Myers, Ms. Mallaisé stated that Mr. Wheat was not acceptable for that position because he did not have a "long enough runway."  SVP Mallaisé instructed VP Knox to find someone with "more runway" to strengthen the organization.

31.    During the conference call, HR SVP Mallaisé also singled out another Zachry

employee, Jon Atteberry, as not having a "long enough runway to benefit the company" in discussions about bringing back Mr. Atteberry from furlough.

32.    On or about May 8, 2020,  VP Knox told Mr. Gray about SVP Mallaisé's "runway" comments during the conference call and the directive to not hire Mr. Wheat for the superintendent position and to not bring back Mr. Atteberry from the furlough due to their ages or "runways."

33.    On information and belief, Zachry subsequently terminated Mr. Wheat's employment as part of the company's layoffs.

34.    When VP Knox told Mr. Gray about HR SVP Mallaisé's "runway" comments and directives concerning Mr. Wheat and Mr. Atteberry, Mr. Gray objected to VP Knox opposing the comments and employment decisions, stating that they were age discrimination. Mr. Gray also complained to VP Knox that he believed age discrimination was involved in the denial of a pay increase for another employee, Norma Rico, who was believed to be in her 50's.

35.     On other occasions in the spring and summer of 2020, Mr. Gray also complained to VP Knox about other age discriminatory practices by senior management including the employment decisions he had previously experienced such as Zachy selecting a much younger less experienced person for the General Counsel position than Mr. Gray. Mr. Gray specifically was critical of CEO John Zachry's broader practice of replacing older employees with younger people and his use of different tactics attempting to disguise those purposeful actions, including recurring organizational changes, manufacturing reasons to "ease people out," forcing older people to retire sooner than the employee desired, and targeting older employees during economic downturns.

36.    On or about August 27, 2020, when Mr. Gray was 60 years old, Zachry informed him that his position was being eliminated and that he would be terminated effective September 30, 2020.

37.     Zachry terminated Mr. Gray's employment because of his age and because he opposed Zachry's age discriminatory employment practices.

38.     Zachry's employment policies and practices, including its layoff/reduction in force ("RIF") in 2020 of Mr. Gray and numerous other employees, had a disparate impact on older employees.

39.     Zachry did not offer Mr. Gray a severance agreement which, under the law, would have required Zachry to disclose the titles and ages of employees who were affected by the layoff and those who were not. On information and belief, Zachry did not offer severance agreement to other employees who were also laid off in 2020.  By not offering severance agreements, Zachry was able to avoid making these disclosures that would have showed a disparate impact on older employees.

40.     However, after Mr. Gray filed his charge of discrimination with the EEOC, Zachry provided age and position data to the EEOC regarding its layoffs in the Asset Management Department. A preliminary statistical analysis of the data with a linear regression and a logistic regression revealed that employees aged 60 or older had a likelihood of 32.3% of being terminated in the RIF. Employees aged 50-59 had a RIF likelihood of 9.3%. This difference in RIF likelihood between 60 Plus and 50-59 is statistically significant at the 5% level (strong statistical evidence of a RIF difference by age.)

41.     Zachry refused to provide the EEOC with information concerning other departments and persons who Zachry laid off at the time. On information and belief, this information would have further shown Zachry's layoff decisions had a disparate impact on older employees.

42.     After Zachry terminated Mr. Gray, Zachry posted online that it was hiring an

attorney to assist HR SVP Mallaisé and others relating to employee relations matters.

43.    As a 15-year Zachry former employee and attorney, Mr. Gray was well-qualified for the position.

44.    Mr. Gray applied for the position, however, Zachry never even interviewed him for the job and on information and belief, hired another applicant.

45.    Zachry knowingly engaged in age discriminatory and retaliatory practices in reckless disregard to the harm caused to Mr. Gray.

## CAUSES OF ACTION

## AGE DISCRIMINATION

46.    Plaintiff reasserts and incorporates the allegations contained in this complaint as if fully stated herein.  Each individual cause of action is pled in addition to or in the alternative to the other claims in this complaint.

47.    Mr. Gray was a protected employee within the meaning of the Age Discrimination in Employment Act, as amended, ("ADEA"), 29 U.S.C. §§ 621 *et seq*.

48.    Zachry is an employer within the meaning of the ADEA.

49.    Zachry violated the ADEA by terminating Mr. Gray's employment because of his age. Zachry's discrimination against Mr. Gray include claims of disparate treatment and disparate impact.

## RETALIATION

50.    Plaintiff reasserts and incorporates the allegations contained in this complaint as if fully stated herein.  Each individual cause of action is pled in addition to or in the alternative to the other claims in this complaint.

51.    Mr. Gray was a protected employee within the meaning of the ADEA.

9

52.    Zachry is an employer within the meaning of the ADEA.

53.    Mr. Gray engaged in protected activities, including opposing in good faith Zachry's age discriminatory actions and statements and/or filing a charge of discrimination.

54.    Zachry retaliated against Mr. Gray by terminating his employment for pretextual reasons and not hiring him for the vacant attorney position after Mr. Gray filed his charge of discrimination.

## DAMAGES

55.    As a result of Zachry's violations of law, including the ADEA, Mr. Gray has suffered significant actual damages in the form of lost wages and benefits (past and future).

56.    Defendants Zachy's discrimination and retaliation towards Mr. Gray was willful in that Zachry either knew that its conduct violated the ADEA, or acted with reckless disregard for whether its conduct complied with the ADEA.

57.    As a result of Zachry's violations of law, Mr. Gray requests the Court to enter an order for all actual, economic, liquidated, and other damages or remedies, equitable, statutory or otherwise, and attorney fees, expert fees, expenses and costs, that Mr. Gray proves are appropriate.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Mr. Gray respectfully prays that the Zachry Defendants be cited and called to answer, and that on final judgment Mr. Gray be granted relief under Federal law, including:

a)    Damages for lost wages and benefits, past and future;

b)    Liquidated damages;

c)    Equitable remedies, including reinstatement if feasible, and an order preventing Defendant from discriminating against other employees on the

10

basis of age;

d)      Attorney fees, expert fees, expenses and costs of suit;

e)      Interest allowed by law;

f)      General damages;

g)      Special damages;

h)      Such other and further relief that is proven to be appropriate.

Respectfully submitted,

ROBERT W. SCHMIDT LAW FIRM, PLLC
1502 West Avenue
Austin, Texas 78701
(512) 484-2276
bob@robertwschmidt.com


By_____/s/ Robert W. Schmidt_____
Robert W. Schmidt

_____/s/ Robert Notzon_____
Robert Notzon
The Law Office of Robert Notzon
Texas Bar No. 00797934
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
(512) 852-4788 facsimile

**ATTORNEYS FOR PLAINTIFF**

11